XAVIER BECERRA
Attorney General of California
PEGGY S. RUFFRA
Supervising Deputy Attorney General
DAVID M. BASKIND
Deputy Attorney General
State Bar No. 208883
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3759
Fax: (415) 703-1234
E-mail: David.Baskind@doj.ca.gov
*Attorneys for Respondent*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **DONEL POSTON,**<br><br>Petitioner,<br><br>**v.**<br><br>**JASON PICKETT, Acting Warden,**<br><br>Respondent. | 3:18-cv-03450-CRB (PR) |

# EXHIBITS 20-23

**20 Motion to Recall Remittitur**
**21 Opposition to Motion to Recall Remittitur**
**22 Reply in Support of Motion to Recall Remittitur**
**23 Order Denying Motion to Recall the Remittitur**

RANDI COVIN
State Bar No. 168422
P.O. Box 1120
Willits, CA. 95490
Telephone: (707) 459-2456
e-mail: rcovin13@gmail.com

Attorney for Defendant/Appellant
DONEL POSTON

COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST DISTRICT, DIVISION FIVE

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, | Appeal No. A141557 |
| Plaintiff and Respondent, | Alameda County No. 172522B |
| v. | |
| DONEL POSTON, | |
| Defendant and Appellant. | |

**MOTION TO RECALL REMITTITUR**

Appellant, Donel Poston, hereby moves, pursuant to California Rules of Court, rule 8.272(c)(2), to recall the remittitur issued on September 12, 2017, to permit supplemental briefing on Senate Bill 620, an amendment to Penal Code section 12022.53, which applies to this case. This motion is based on the attached memorandum of points and authorities and the Court's records and files in this case.

MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION.

On October 11, 2017, the Governor signed Senate Bill 620, which amends Penal Code sections 12022.5 and 12022.53 to permit a trial court to strike or dismiss firearm enhancement allegations in the interest of justice, under Penal Code section 1385.[1] At the time of Poston's sentencing hearing, imposition of such firearm enhancements was mandatory.

Section 12022.53, subdivision (h), then provided:

> (h) Notwithstanding Section 1385 or any other provision of law, the court shall not strike an allegation under this section or a finding bringing a person within the provisions of this section.

The new section 12022.53, subdivision (h), effective January 1, 2018, provides:

> (h) The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section. The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law.

As explained in Section III, *post*, the amendment to section 12022.53, subdivision (h), is an ameliorative change in the law which must be applied retroactively to all cases, even those already final. Poston's case was final on June 27, 2017, just a few months before the new law was passed.

On remand, Poston would have a compelling case for striking one or both of his 25-life enhancements under section 12022.53, subdivision (d). Co-defendant Joe McNeely was the undisputed aggressor in the charged shooting and respondent conceded that Poston had a plausible claim of self-defense. McNeely fired the shot that killed the bystander. Although Poston had prior convictions for drug and theft offenses, there was no evidence of any prior violence, unlike McNeely.

Poston has a strong argument for striking the firearm enhancements on the ground that he poses no danger to public safety – the new official purpose of punishment under the Restorative Justice Act of 2016, Penal Code section 1170, subdivision (a). Even if both firearm enhancements are stricken, Poston will still be serving a sentence of 7 years plus 15-life and will not be eligible for parole until age 60. Poston requests that the Court recall the remittitur and permit briefing on application of the new law in the interests of justice.

## II. FACTUAL BACKGROUND.

On February 3, 2014, Poston and codefendant Joe McNeely were convicted by jury of the attempted murder of each other, the second-degree

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

murder of a bystander, and unlawful possession of a firearm. (3 CT 873-876, 887-890; 6 RT 1471-1474, 1483-1487; counts one through five; §§ 187, 664, 29800, subd. (a)(1).) The jury found true allegations that Poston and McNeely both discharged firearms causing great bodily injury and death under section 12022.53, subdivision (d), in counts one through three. (3 CT 873-876, 887-890; 6 RT 1471-1474, 1483-1487.)

On March 21, 2014, the trial court denied Poston's motion for new trial, denied probation, and sentenced both defendants to aggregate terms of 7 years plus 65 to life, including two terms each of 25 to life pursuant to section 12022.53, subdivision (d). (3 CT 887-891; 6 CT 1483-1487.)

Poston appealed. This Court affirmed in an unpublished opinion issued January 6, 2017. A companion petition for writ of habeas corpus was denied that same date. Poston's petitions for review were denied by the California Supreme Court on March 29, 2017. The judgment became final on June 27, 2017, just a little over three months before the new law was enacted.

## III. SENATE BILL 620 APPLIES RETROACTIVELY.

Senate Bill 620 applies retroactively as a matter of legislative intent and under the state and federal Equal Protection guarantees. (See U.S. Const., 14th Amend.; Cal. Const., art. I, § 15; see also *Burden v. Snowden*

(1992) 2 Cal.4th 556, 562 [analysis of the meaning of a statute is a legal question which is reviewed de novo]; *In re Estrada* (1965) 63 Cal.2d 740 [the Legislature is presumed to have intended to apply an ameliorative criminal statute retroactively].)

Although questions of retroactivity often focus on application to cases not yet final, new statutes can and sometimes must be applied retroactively to all cases, including those with final judgments. (See *In re Kapperman* (1974) 11 Cal.3d 542, 544-544-550; *In re Chavez* (2004) 114 Cal.App.4th 989, 1000; *In re Brown* (1978) 78 Cal.App.3d 647, 650-652; *Way v. Superior Court* (1977) 74 Cal.App.3d 165, 179-180.) Senate Bill 620 must be applied retroactively, including to final cases like this one, as explained, *post*.

A. THE LEGISLATURE CLEARLY INTENDED SENATE BILL 620 TO APPLY RETROACTIVELY.

Penal Code section 3 provides that a penal statute does not have retroactive effect unless "it is expressly so declared." Senate Bill 620 does expressly declare that it is to be applied retroactively to any resentencing:

> The court may, in the interest of justice pursuant to Section 1385 at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section. *The authority provided by the subdivision applies to any resentencing that may occur pursuant to any other law.*

(S.B. 620; § 12022.53, subd. (h), eff. Jan. 1, 2018 [emphasis added].)

"Any resentencing" includes resentencing in cases already final, for example, when a federal court overturns a California judgment on constitutional grounds, sometimes years after finality. Resentencing could also occur years after finality if a state court reverses the judgment on habeas corpus for constitutional or state-law error, for prosecutorial misconduct, for ineffective assistance of counsel, or for newly discovered evidence of actual innocence.

The legislative history further indicates that Senate Bill 620 was intended to apply retroactively. According to the author, the amendment to section 12022.53 (and section 12022.5) was necessary because mandatory imposition of long firearm enhancements has not proved to be an effective deterrent to violent crime and has caused new problems, "[g]reatly increas[ing] the population of incarcerated persons [and] [d]isproportionately increas[ing] racial disparities in imprisonment[]." (S.B. 620, Sen. Comm. on Pub. Saf. (Apr. 24, 2017), at p. 3.)

The author of Senate Bill 620 reported that more than 30,000 people are currently incarcerated as the result of long firearm enhancements on top of already lengthy sentences for serious crimes. (*Ibid*.) The Senate Committee on Public Safety cited the Little Hoover Commission's 2014 report explaining the devastating impact section 12022.53 enhancements

have had on California's prison population explosion and resulting budget problems. (*Id*. at pp. 3-4; see also S.B. 620, Sen. Floor Anal. (June 15, 2017) [discussing tremendous potential savings to the state from discretionary striking of firearm enhancements; "If sentences were not enhanced by a year for 100 inmates, the GF expenditures avoided would be $2.9 million for that year"].)

The purposes of S.B. 620 expressed by the Legislature – reduction of the prison population, reduction of racial disparities in length of imprisonment, and reduction of imprisonment costs - are best served by full retroactive application, to final as well as non-final cases. Presumably the same ratio of final and non-final cases are deserving of relief under section 12022.53, subdivision (h). The two populations seem indistinguishable. Full retroactive application should dramatically increase the beneficial effects of the new law immediately by immediately beginning to release some prisoners and relieve prison overcrowding; immediately beginning to reduce imprisonment costs; and immediately beginning to reduce racial disparities in length of imprisonment.

There is no constitutional impediment to full retroactive application of S.B. 620 if that is what the Legislature intended. (See *In re Chavez, supra*, 114 Cal.App.4th at p. 1000.) In *Chavez*, the Sixth District held that a

legislative change to Revenue and Taxation Code section 19705, changing the punishment for filing false tax returns from an indeterminate sentence to a determinate one, applied retroactively to final cases as a matter of legislative intent. (*Id*. at pp. 991, 1000; see also *Way v. Superior Court, supr*a, 74 Cal.App.3d at pp. 178-180 [holding the Determinate Sentencing Act fully retroactive and applicable to cases with final judgments]; accord *In re Brown, supra*, 78 Cal.App.3d at pp. 651-652.)

The express application of S.B. 620 to future resentencing hearings as well as the legislative analyses of the bill set out above, rebut the presumption of prospective application of a new statute in section 3 and require full retroactive application of the new section 12022.53, subdivision (h). (See also § 4 ["The rule of the common law, that penal statutes are to be strictly construed, has no application to this code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice"]; *In re Estrada, supra*, 63 Cal.2d at p. 745 ["When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act"]; *In re Chavez, supra*, 114 Cal.App.4th at p. 1000 [rejecting argument that dictum in *Estrada* restricted application of an

ameliorative change in the law to non-final cases; "There is nothing in *Estrada* that prohibits the application of revised sentencing provisions to persons who sentences have become final if that is what the Legislature intended or what the Constitution requires"].)

*Estrada's* presumption of retroactivity applies if the new law provides a new opportunity for discretionary imposition of a lesser punishment even if lesser punishment is not guaranteed. (See *People v. Francis* (1969) 71 Cal.2d 66, 76-77 [*Estrada* required retroactive application of new law changing a felony to a wobbler, providing a new opportunity for discretionary imposition of a lesser punishment - misdemeanor sentencing]; *In re Griffin* (1965) 63 Cal.2d 757, 759 [*Estrada* required retroactive application of reduction in minimum parole eligibility term on life sentence, providing a new opportunity for discretionary imposition of a lesser punishment - reduction of time actually served]; *People v. Pineda* (2017) 14 Cal.App.5th 469, 480 [*Estrada* requires retroactive application of Prop. 57's requirement of a juvenile transfer hearing, providing a new opportunity for discretionary imposition of a lesser punishment - a juvenile disposition].)[2]

---

[2] The question whether Proposition 57's juvenile transfer provision applies retroactively is presently before the California Supreme Court in numerous cases. (See *People v. Mendoza*, review granted July 12, 2017, No. S241647; *People v. Superior Court (Walker)*, review granted July 11, 2017, No. S243072; *People v. Marquez*, review granted June 19, 2017, No.

S.B. 620 does not guarantee a lesser punishment, but like the new laws in *Francis, Griffith*, and *Pineda*, it provides a new opportunity for discretionary imposition of a lesser punishment by allowing the sentencing court to strike a section 12022.53 (or 12022.5) firearm enhancement. The Legislature has determined that lengthy firearm enhancements are too severe a punishment in some cases.

As in *Estrada* and its progeny, "[i]t is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply . . . because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*In re Estrada, supra*, 63 Cal.4th at p. 745; see also § 1170, subd. (a)(1) [In A.B. 2590 of 2016, the Legislature changed the official purpose of imprisonment from "punishment" for its own sake to "public safety achieved through punishment, rehabilitation, and restorative justice"].)

The Legislature clearly intended to apply Senate Bill 620 retroactively and resentencing is required.

---

S242660; *People v. Vela*, review granted June 2, 2017, No. S242298; *People v. Cervantes*, review granted May 17, 2017, No. S241323; *People v. Lara*, review granted May 17, 2017, No. S241231.

B. THE STATE AND FEDERAL CONSTITUTIONAL GUARANTEES OF EQUAL PROTECTION OF THE LAWS REQUIRE RETROACTIVE APPLICATION.

Poston believes retroactive application of S.B. 620 is required to effectuate the Legislature's intent. In addition, retroactive application is required to comply with the state and federal constitutional guarantees of equal protection of the laws. "Equal protection" means "no person or class of persons shall be denied the same protection of the laws [that] is enjoyed by other persons or other classes in like circumstances." (*People v. Guzman* (2005) 35 Cal.4th 577, 591.) The state cannot constitutionally treat similarly situated groups in an unequal manner without a rational basis for doing so. (*Id*. at pp. 591-592; see also *Johnson v. Dept. of Justice* (2015) 60 Cal.4th 871, 881; *In re Kapperman*, *supra*, 11 Cal.3d at pp. 544-550 [express statutory term mandating prospective-only application of § 2900.5, which created a right to presentence custody credits, violated equal protection; retroactive application even to final cases was constitutionally required].)

S.B. 620 expressly applies to any defendant resentenced after the statute's effective date "pursuant to any other law." (§§ 12022.5, subd. (c), 12022.53, subd. (h).) If the statute is otherwise given only prospective effect, the result will be to create two classes of defendants,

indistinguishable with regard to the purposes of S.B. 620, but treated differently according to their success on post-conviction review.

Those defendants whose judgments were reversed on appeal, on certiorari, or on state or federal habeas corpus would be entitled to the benefit of the new law at resentencing, no matter how minor or unrelated to the firearm enhancement the basis for reversal was. Those whose judgments were not reversed would not be entitled to the benefit of the new law, no matter how strong a case for striking a firearm enhancement they could present.

There is no legitimate public purpose for distinguishing between these classes of prisoners with regard to the Legislature's purposes of reducing the prison population, reducing racial disparities in length of imprisonment, and reducing imprisonment costs. (Cf. *In re Kapperman, supra*, 11 Cal.3d at p. 547 [state could show no legitimate public purpose for distinguishing between prisoners received in state prison before and after § 2900.5's effective date with regard to the Legislature's purpose of equalizing precommitment and postcommitment incarceration credits].)

Senate Bill 620 must be applied retroactively to all cases, including those already final, to effectuate the Legislature's intent and the *Estrada* presumption, and also to avoid an equal protection violation.

## IV. RECALL OF THE REMITTUR IS AUTHORIZED AND APPROPRIATE IN THE INTEREST OF JUSTICE.

California Rules of Court, rule 8.272(c)(2) provides: "On a party's or its own motion or on stipulation, and for good cause, the court may stay a remittitur's issuance for a reasonable period or order its recall." "Remittitur is the device by which an appellate court formally communicates its judgment to the lower court, finally concluding the appeal and relinquishing jurisdiction over the matter. By recalling the remittitur, an appellate court reasserts jurisdiction on the basis that the remittitur, or more often the judgment it transmitted, was procured by some improper or defective means. Technically the court does not reclaim a jurisdiction it has lost, but disregards a relinquishment of jurisdiction that is shown to have been vitiated." (*In re Grunau* (2008) 169 Cal.App.4th 997, 1002 [citations omitted].)

*People v. Mutch* (1971) 4 Cal.3d 389, 396, explained that, while a legal error normally does not warrant an order recalling remittur, there is an exception when the error would entitle the defendant to a writ of habeas corpus. *Mutch* concerned a change in the law of kidnapping effected by the decision in *People v. Daniels* (1969) 71 Cal.2d 1119, which altered prior California law on the distance required for asportation. (*People v. Mutch, supra*, 4 Cal.3d at pp. 393-394.) After *Daniels*, the defendant

in *Mutch* moved the Court of Appeal for a recall of the remittitur, asserting he was entitled to a redetermination of his appeal based on *Daniels*. The Court of Appeal denied the request.

The California Supreme Court granted the defendant's petition for hearing and transferred to itself the defendant's application to recall the remittitur. (*People v. Mutch, supra*, 4 Cal.3d at p. 393.) The Supreme Court further concluded the defendant would be entitled to habeas corpus relief. (*Id*. at p. 396.) The Supreme Court noted: "As a general rule, an error of law does not authorize the recalling of a remittitur." (*Ibid*.) But "[a]n exception is made . . . when the error is of such dimensions as to entitle the defendant to a writ of habeas corpus. The remedy of recall of the remittitur may then be deemed an adjunct to the writ, and will be granted when appropriate to implement the defendant's right to habeas corpus." (*Id*. at pp. 396-397.)

As in *Mutch*, recall of the remittitur is appropriate here because a new law applies to Poston, who would be entitled to a writ of habeas corpus on that basis. Poston is entitled to resentencing under the new law, giving the trial court an opportunity to exercise its discretion as to whether or not the two 25-to-life firearm enhancements should be imposed.

There is a reasonable chance one or both of Poston's firearm enhancements would be stricken if he is given an opportunity to present the

issue at resentencing. Poston did not initiate the altercation with co-defendant McNeely, the undisputed aggressor. (RB 19-20, 69, 82, 91; 1 RT 44; 20 RT 1888.) Unlike McNeely, Poston had no violent prior offenses. (18 RT 1516-1520.) Respondent conceded that Poston had a plausible claim of self-defense. (RB 45, 78.) Poston had a credible reason for being armed for self-defense after being shot in his home by an intruder and having to face gun violence on the streets of East Oakland. (18 RT 1525-1527, 1530-1531; 19 RT 1607, 1612.)

Poston only shot McNeely after McNeely struck him and knocked him down. (Slip opn. At pp. 3-4, and fn. 3; 18 RT 1545, 1561; 19 RT 1730-1731.) It was McNeely who shot the bystander, firing wildly down the street as Poston ran away. (Slip opn. at pp. 3-4; 18 RT 1551-1552.) A sentence reduction is especially likely under the new standard which emphasizes public safety, rehabilitation, and restorative justice, instead of punishment for its own sake. (See § 1170, subd. (a).)

Moreover, resentencing is required regardless of Poston's chances of success under sections 1385 and 12022.53, subdivision (h), because the sentencing court did not have an opportunity to exercise the discretion subsequently conferred by Senate Bill 620. As the Supreme Court has explained: “Defendants are entitled to sentencing decisions made in the

exercise of the informed discretion of the sentencing court." (*People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8 [citations and internal quotation marks omitted].) The sentencing court cannot properly exercise informed discretion if it is unaware of that discretion. (*Ibid*.; accord *People v. Carmony* (2004) 33 Cal.4th 367, 378.) The reviewing court cannot substitute its own discretion for that of the trial court. (*In re Marriage of Bower* (2002) 96 Cal.App.4th 893, 897.)

Thus, where it is clear "the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228 [citations omitted].)

At the time of Poston's sentencing, section 12022.53 did not permit dismissal of firearm enhancement allegations under section 1385. Now it does. Since "the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing." (See *People v. Brown, supra,* 147 Cal.App.4th at p. 1228.)

Denial of Poston's Motion to Recall the Remittitur would work an injustice by depriving him of the opportunity to seek application of Senate Bill 620 and the possible striking of one or both of his firearm enhancements. Accordingly, recall of remittur is appropriate to allow briefing.

* * * * * *

## CONCLUSION

For all of these reasons, Poston requests that this Court issue an order recalling the remittur to permit briefing on the application of Senate Bill 620 and the recent amendment to section 12022.53 to his case.

Dated: December 17, 2017

Respectfully submitted,

Randi Covin
Attorney for Appellant
DONEL POSTON

# DECLARATION OF SERVICE

I, Randi Covin, declare that I am over 18 years of age and not a party to this action. My business address is P.O. Box 1120, Willits, California, 95490. On December 18, 2017, I served a true and correct copy of **MOTION TO RECALL REMITTITUR on:**

Mr. Donel Poston
AT2512
High Desert State Prison
PO Box 3030
Susanville, CA. 96127

by depositing such copy in the U.S. Mail, addressed as indicated above, postage pre-paid, at Willits, California.

On December 18, 2017, I served true and correct pdf copies of **MOTION TO RECALL REMITTITUR** by e-mail to:

Attorney General
SFAG.Docketin@doj.ca.gov

First District Appellate Project
Eservice@fdap.org

Philip Brooks
philipmbrooks@gmail.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on December 18, 2017, at Willits, California.

/s/ Randi Covin

# EXHIBIT 21

Court of Appeal, First Appellate District
Charles D. Johnson, Clerk/Administrator
Electronically RECEIVED on 1/25/2018 at 11:13:35 AM
Court of Appeal, First Appellate District
Charles D. Johnson, Clerk/Administrator
Electronically FILED on 1/25/2018 by A. Reasoner, Deputy Cler

XAVIER BECERRA
Attorney General of California
GERALD A. ENGLER
Chief Assistant Attorney General
JEFFREY M. LAURENCE
Senior Assistant Attorney General
RENÉ A. CHACÓN
Supervising Deputy Attorney General
DAVID M. BASKIND
Deputy Attorney General
State Bar No. 208883
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-1308
Fax: (415) 703-1234
E-mail: David.Baskind@doj.ca.gov
*Attorneys for Respondent*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT, DIVISION FIVE

| | |
|---|---|
| **THE PEOPLE OF THE STATE OF CALIFORNIA,**<br>Plaintiff and Respondent,<br>**v.**<br>**JOE McNEELY & DONEL POSTON,**<br>Defendants and Appellants. | Case No. A141557<br><br>Alameda County Superior Court, Case Nos. C172522A, C172522B |

**OPPOSITION TO MOTION TO RECALL REMITTITUR**

TO THE HONORABLE BARBARA J.R. JONES, PRESIDING JUDGE, AND TO THE HONORABLE ASSOCIATE JUSTICES OF THE CALIFORNIA COURT OF APPEAL, FIRST APPELLATE DISTRICT, DIVISION FIVE:

On January 6, 2017, this Court affirmed appellants' convictions for second degree murder, attempted murder, and possession of a firearm by a felon. The trial court imposed on each appellant sentences of 72 years to life. Each sentence included two mandatory terms of 25 years to life for firearm enhancements. (Pen. Code, § 12022.53, subd. (d); 3CT 887–891; 6CT 1483–1487; see 21RT 25–26, 29.)[1]

On March 29, 2017, in case No. S239918, the California Supreme Court denied appellants' petitions for review. This Court issued the remittitur the same day. Appellants' convictions became final 90 days later, on June 27, 2017, i.e., the last day they could file a petition for writ of certiorari.

On December 18, 2017, Poston filed a motion to recall the remittitur. On December 21, 2017, McNeely filed the same motion. Both appellants contend that they should be resentenced in light of recently amended section 12022.53, subdivision (h). As of January 1, 2018, that statute grants sentencing courts the discretion to strike firearm enhancements.

On January 9, 2018, this Court ordered respondent to file a response.

As discussed below, respondent opposes the motions because the amendment to section 12022.53 is not retroactive to defendants whose judgments are final. Moreover, there was no fraud, mistake, or inadvertence that needs to be corrected. And even if recall of the remittitur was appropriate for legal errors, there was none here. Appellants were properly sentenced according to the law that applied at that time. Moreover, this Court could not have erred because appellants did not even raise their current claim in their appeal. In fact, appellants' motions are

---

[1] Subsequent statutory references are to the Penal Code unless otherwise indicated.

Citations to "Poston" and "McNeely" are to their respective motions to recall remittitur.

simply an impermissible attempt to circumvent the finality of their convictions.

## ARGUMENT

### THIS COURT SHOULD DENY THE MOTION TO RECALL THE REMITTITUR BECAUSE THE AMENDMENT TO PENAL CODE SECTION 12022.53 IS NOT RETROACTIVE TO FINAL JUDGMENTS; RECALLING THE REMITTITUR IS AN IMPROPER REMEDY FOR JUDICIAL ERRORS; AND REMAND WOULD SERVE NO PURPOSE BECAUSE THE RESENTENCING COURT WOULD NOT STRIKE THE FIREARM ENHANCEMENTS

### A. The Amendment to Penal Code Section 12022.52 Is Not Retroactive to Final Judgments

At the time appellants were sentenced, imposition of the firearm enhancements was mandatory. As of January 1, 2018, Senate Bill 620 modified subdivision (h), granting trial courts discretion to strike or dismiss such enhancements in the interest of justice. (Stats. 2017, ch. 682, § 2.)

Appellants concede that their convictions became final on June 27, 2017. (Poston at p. 2; McNeely at p. 3; see *In re Pine* (1977) 66 Cal.App.3d 593, 595 ["The finality of a judgment has been defined as that point at which the courts can no longer provide a remedy on direct review. This includes the time within which to petition the United States Supreme Court for writ of certiorari."].) However, they contend "the Legislature clearly intended Senate Bill 620 to apply retroactively." (Poston at p. 5; McNeely at p. 6.)

Generally, amendments to the Penal Code do not apply retroactively. (See Pen. Code, § 3 ["No part of [the Penal Code] is retroactive, unless expressly so declared"]; *In re Estrada* (1965) 63 Cal.2d 740, 744–745.) However, under *Estrada*, courts presume that, absent evidence to the contrary, the Legislature intended those amendments to apply to all defendants whose judgments are not yet final on the amendments' operative

date. (*Estrada*, at pp. 744–746; *People v. Robbins* (January 19, 2018) __ Cal.App.5th __ [2018 WL 487426].) The *Estrada* rule applies to amendments that give trial courts discretion to impose a lower term. (*People v. Francis* (1969) 71 Cal.2d 66, 75–78; *People v. Robbins*.)

In *Francis*, the Legislature amended the statute proscribing marijuana possession, changing that crime from a straight felony to a wobbler. (*Francis*, *supra*, 71 Cal.2d at p. 75.) After that change, trial courts had the discretion to sentence defendants to a lower term. (*Ibid.*; see also former § 17, as amended by Stats. 1968, ch. 1192, § 2.) *Francis* held that the amendment applied retroactively to defendants whose judgments were not yet final. (*Francis*, at pp. 75–78.) In sum, respondent concedes that amended section 12022.53 applies retroactively to defendants who committed their crimes before the amendment became operable. But it is not retroactive for defendants whose judgments became final before operability, i.e., January 1, 2018.

While appellants acknowledge that, pursuant to section 3, retroactivity must be "'expressly so declared,'" they *infer* retroactivity to all defendants from the purported Legislative intent to shorten as many prison sentences as possible. (See Poston at pp. 6–8; McNeely at pp. 6–8.) However, like most changes to criminal law, the Legislature could have had a prospective intent without desiring to disturb final judgments.

Appellants also note that amended section 12022.53, subdivision (h), provides that the discretion applies at the time of sentencing as well as "to any resentencing that may occur pursuant to any other law." Appellants argue that resentencing could occur after a judgment is final pursuant to a habeas petition. Therefore, the amendment applies retroactively. (Poston at p. 6; McNeely at pp. 6–7; Stats. 2017, ch. 682, § 2.) However, appellants ignore the condition that the resentencing take place pursuant to another law. Thus, only if a habeas court exercised proper jurisdiction and found

an error that required resentencing would the amended statute come into play.

In short, the reference to resentencing under "any other law" clearly evinces the intent that the amended subdivision itself cannot trigger a resentencing. And appellants simply do not explain how "any other law" operates to trigger the amendment in the current matter. Put another way, if the Legislature had wanted the amendment to apply to *all* cases, it would not have predicated it on the operation of "any other law." Therefore, trial courts may exercise their new discretion only when resentencing is first required under a court order or *other* statute. (See § 1170.126, subd. (l) ["Nothing in this and related sections is intended to diminish or abrogate the finality of judgments in any case not falling within the purview of this act."]; § 1170.18, subd. (n) [same]; Health & Saf. Code, § 11361.8 [same].)

Finally, if the Legislature had wanted to, it would have been very easy for it to expressly state that the amendment was retroactive. It would not have used the "any other law" language and it would have simply said it applied to *all* defendants serving sentences for firearm enhancements. Because the Legislature did not say anything suggesting that was its intent, the default rule applies, and the amendment's retroactive effect is limited to defendants whose judgment had not become final before January 1, 2018. (See *Estrada*, *supra*, 63 Cal.2d at pp. 744–746; *People v. Robbins*, *supra*, 2018 WL 487426.)

### B. Appellants Are Not Equally Situated with Defendants Sentenced After the Firearms Statute Was Amended

"""The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.'" [Citation.] 'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more

similarly situated groups in an unequal manner.' [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' [Citation.]" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253; see *People v. Wutzke* (2002) 28 Cal.4th 923, 943–944.)

Here, appellants claim they are similarly situated to defendants who will be sentenced under the amended statute. However, the Legislature has the authority to change the laws and apply them prospectively. Defendants are always prosecuted under the laws that apply at the time the crimes were committed or during trial and appeal. Defendants do not have a constitutional right to be prosecuted under laws that did not exist at the time they committed their crimes.

"'[T]he 14th Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time.' [Citation.]" (*People v. Floyd* (2003) 31 Cal.4th 179, 191; see *Estrada*, *supra*, 63 Cal.2d at p. 744 [Legislature's determination whether old or new statute should apply, "either way, would [be] legal and constitutional"].) Here, appellants were tried, convicted, sentenced, and availed themselves of the full appellate process before the amendment went into effect. So they are not similarly situated, for purposes of the law, as someone whose conviction is not final.

Moreover, even if appellants were similarly situated to those whose convictions were not yet final when the amendment took effect, the different classification would still be """rationally related to a legitimate governmental purpose."' [Citation.] 'A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced should be treated alike."' [Citation.]" (*In re Spencer S.* (2009) 176 Cal.App.4th 1315, 1325.)

"Where, as here, a disputed statutory disparity implicates no suspect class or fundamental right, 'equal protection of the law is denied only where there is no "rational relationship between the disparity of treatment and some legitimate governmental purpose."'" (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881; see *In re Olivas* (1976) 17 Cal.3d 236, 251.) Appellants acknowledge that the rational basis test is appropriate here. (Poston at p. 13; McNeely at p. 12.)

As noted above, the state has the right to make laws and apply them prospectively. Appellants' prosecution, conviction, and sentencing were proper under the laws in place when those events occurred. (See *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 567–569.) To the extent appellants claim "the question involves the possible retroactive application of a more beneficial sentencing scheme, [they] ha[ve] no fundamental liberty interest at stake." (*People v. Lynch* (2012) 209 Cal.App.4th 353, 359.)

Furthermore, in passing Senate Bill 620, the Legislature could have concluded that applying it to judgments that were not final was rationally related to the legitimate governmental purpose of "'assur[ing] that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment []as written.' [Citations.]" (*People v. Floyd*, *supra*, 31 Cal.4th at p. 188.) The fact penal laws might not maintain their complete deterrent effect in all cases, such as for defendants who committed their crimes before, but were not yet tried when, the amendment went into effect, is immaterial. "'[W]hen conducting rational basis review, we must accept any gross generalizations and rough accommodations that the [voters] seem[ ] to have made.' [Citation.] 'A classification is not arbitrary or irrational simply because there is an "imperfect fit between means and ends"' [citations], or 'because it may be "to some extent both underinclusive and overinclusive"' [citations]." (*Johnson v. Department of*

*Justice*, *supra*, 60 Cal.4th at p. 887.) Accordingly, only applying the amendment to section 12022.53 prospectively does not violate appellants' equal protection rights. (See *People v. Floyd*, at p. 191.)

### C. Recall of the Remittitur Is Inappropriate Because This Court's Opinion Was Not Affected by Fraud, Mistake, or Inadvertence

"On a party's or its own motion or on stipulation, and for good cause, the court may stay a remittitur's issuance for a reasonable period or order its recall." (California Rules of Court, rules 8.272(c)(2), 8.540(c)(2).) Good cause is generally found when an injustice has been committed through "fraud, mistake, or inadvertence." (*People v. Randazzo* (1957) 48 Cal.2d 484, 487; *In re Martin* (1962) 58 Cal.2d 133, 139 ["'[T]he extra-ordinary remedy by motion to recall the remittitur may be invoked only in cases of fraud or imposition practiced upon the court or upon the opposite party, or where the judgment was based on a mistake of fact or occurred through inadvertence.'"]; *Kohle v. Sinnett* (1955) 136 Cal.App.2d 34, 35; *Davis v. Basalt Rock Co.* (1952) 114 Cal.App.2d 300, 301; *People v. Sprague* (1880) 57 Cal. 147, 147 [courts have no power to recall remittitur unless it was inadvertently issued].) "'The recall may not be granted to correct judicial error.'" (*Kohle v. Sinnett*, at p. 35; *Davis v. Basalt Rock Co.*, at p. 301.)

Here, appellants do not claim that this Court's opinion contained a clerical error, was issued by mistake or inadvertence, or was the result of fraud. They argue there was a legal error. And even though they acknowledge a remittitur cannot be recalled to correct judicial errors, they assert there is an exception for legal errors that would entitle defendants to a writ of habeas corpus. (Poston at p. 13; McNeely at p. 14.) Appellants are mistaken.

First, appellants never explain the nature of the legal error. The trial court properly sentenced appellants according to section 12022.53, as it existed at that time. Appellants did not challenge the imposition of those terms and this Court properly affirmed the judgments. Thus, there was no error. If appellants are suggesting that the trial court erred by failing to sentence them according to an amendment that had not yet been enacted, they are clearly incorrect. And even if the trial court's sentencing determinations could somehow be construed as "legal error," this Court cannot recall the remittitur for an error in another court—or for a claim that was not even raised on appeal. (See *Heroux v. Atchison, T. & S.F. Ry. Co.* (1939) 14 Cal.2d 285, 287.) So, even if the trial court erred, appellants still have not shown that this Court erred.

Second, appellants contend that there is an exception to the general rule that remittiturs cannot be recalled for judicial error. They claim that *People v. Mutch* (1971) 4 Cal.3d 389, 396 held that "there is an exception when the error would entitle the defendant to a writ of habeas corpus." (Poston at p. 13; McNeely at p. 14.) However, *Mutch* held only that a motion to recall the remittitur "will be granted when appropriate to implement the defendant's right to habeas corpus." (*Mutch*, at pp. 397–398.) In other words, the court simply treated the motion to recall the remittitur as a motion for writ of habeas corpus. There is nothing unusual about that procedure and it is an equitable remedy that prevents injustice when a petitioner simply calls the petition by the wrong name. So, the only exception *Mutch* provided was to grant relief when the party could or should have proceeded on a writ of habeas corpus.[2]

[2] Appellants claim that *Mutch* concerned "a change in the law of kidnapping . . . ." (Poston at pp. 13–14; McNeely at pp. 14–15.) However, *Mutch* noted, "[W]e need not undertake the often perilous task of applying

(continued…)

Notably, here, appellants argue that the exception should apply because they could obtain relief through a habeas petition. (Poston at p. 14; McNeely at p. 15.) But they never explain why they eschewed the well-worn path of habeas corpus in favor of the obscure and constrained method of moving for recall of the remittitur. In fact, it is evident that the so-called exception would swallow the rule. If recalling the remittitur was permissible whenever an issue could be raised on habeas corpus, one would expect to see as many motions to recall the remittitur as habeas petitions. But that is clearly not the case.

It certainly seems that appellants are using their motion to recall the remittitur in an attempt to circumvent the retroactivity bar. Perhaps appellants believe that, if this Court recalls the remittitur, it will undo the finality of their judgment; therefore, this case would be immune to any subsequent determination by the California Supreme Court that the amendment is only retroactive to non-final judgments. (See Poston at p. 13 [citing *In re Grunau* (2008) 169 Cal.App.4th 997, 1002 for the proposition that recall of the remittitur "'disregards a relinquishment of jurisdiction that is shown to have been vitiated.'"]; McNeely at p. 14 [same].) However, granting relief would violate the spirit of all the relevant laws that apply here.

Finally, as discussed above, the amendment to section 12022.53 is not retroactive for defendants whose judgments are final. Therefore, contrary to appellants' argument, they would not be entitled to relief in a petition for writ of habeas corpus. Therefore, even if there was a *Mutch* exception, it

---

(…continued)
to the facts of this case the test of 'retroactivity' . . . ." (*Mutch*, *supra*, 4 Cal.3d at p. 394.) In fact, *Mutch* held that the error involved the application of the kidnapping statute as it applied at the time of the defendant's trial. (*Id.* at p. 395.) So *Mutch* is nothing like the current matter.

would not apply here. Likewise, there is no legal error, fraud, mistake, or inadvertence to correct. Thus, there is no basis to recall the remittitur. (See *People v. Randazzo*, *supra*, 48 Cal.2d at p. 487; *Kohle v. Sinnett*, *supra*, 136 Cal.App.2d at p. 35.)

### D. Remand Would Be Pointless Because the Trial Court Would Not Strike the Firearm Enhancements

Appellants are not entitled to remand and resentencing because the record shows that the trial court would have imposed the same sentence if it had had the discretion to strike the firearm enhancements pursuant to Penal Code section 1385. (See *People v. Gutierrez* (1996) 48 Cal.App.4th 1894, 1896.) In *Gutierrez*, the defendant sought resentencing because it was unclear at the time of sentencing whether the court had discretion to dismiss a prior strike, and the sentencing court had not indicated it believed it had that discretion. (*Ibid.*) The *Gutierrez* court declined to remand because the sentencing court had clearly indicated it would not have exercised its discretion to lessen the sentence. (*Ibid.*) Therefore, "Under the circumstances, no purpose would be served in remanding for reconsideration." (*Ibid.*) The same considerations apply here.

Here, the trial court considered whether to exercise its discretion to run the terms for the murder and attempted murder convictions concurrently: "[T]he court has thought about that since the verdicts have been returned. It seems to the court that in considering the facts and circumstances of the case, to run the sentences concurrently would, in essence, be to either wipe away . . . *the punishment for having fired* at the opposite defendant or of the person who was Mr. Fluker. It seems to me that the intent of each of them has been to certainly try to kill the guy they were *shooting at intentionally* and Mr. Fluker's death is an unfortunate result of their intentions and their acts to kill each other. And the court doesn't think it's appropriate to, in essence, kind of give them a break on

one or the other crime. They ought to be punished for both crimes, both for trying to kill the person they tried to kill and killing the person that died. So in both cases the court is going to run the sentences consecutively." (21RT 27–28, italics added.)

If the trial court had wanted to impose lesser punishment, it could have run the terms for the murder and attempted murder concurrently. The fact that it chose not to do so suggests it would not have chosen to lessen appellants' sentences though other means, i.e., by striking one or both of appellants' firearm enhancements.

Furthermore, the trial court acknowledged that the firearm enhancements were mandatory. (21RT 29.) But it said nothing that suggested it hesitated to impose those enhancements, or thought doing so was unwarranted or excessive.

Finally, appellants do not claim that the trial court showed an inclination to sentence them more leniently, but was legally prevented from doing so. McNeely also does not give any reasons why, at resentencing, the trial court might be persuaded to exercise its discretion to impose a lesser term. (McNeely at pp. 15–16.)

Poston argues that there is a reasonable chance the trial court would strike one or both enhancements because McNeely was the initial aggressor; Poston had no violent prior offenses; respondent conceded Poston had (muddied his potentially) plausible claim of self-defense; and McNeely was the actual killer. (Poston at pp. 14–15.) However, Poston had numerous prior convictions, many probation violations, and four prison priors; the jury rejected Poston's self-defense theory; and it was only a matter of chance that McNeely, rather than Poston, was the actual killer. (6CT 1572–1574.) More importantly, the fact remains that the trial court had the discretion to impose a shorter term, and it instead chose to impose close to the maximum sentence.

Consequently, for the reasons discussed above, the trial court would not have exercised its discretion to strike or dismiss the firearm enhancements if it had had that discretion under amended section 12022.53, subdivision (h). Thus, "[u]nder the circumstances, no purpose would be served in remanding for reconsideration." (*People v. Gutierrez*, *supra*, 48 Cal.App.4th at p. 1896.)

## CONCLUSION

Respondent respectfully requests that this Court deny the motion to recall the remittitur.

Dated: January 25, 2018

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
GERALD A. ENGLER
Chief Assistant Attorney General
JEFFREY M. LAURENCE
Senior Assistant Attorney General
RENÉ A. CHACÓN
Supervising Deputy Attorney General

*/s/ David M. Baskind*
DAVID M. BASKIND
Deputy Attorney General
*Attorneys for Respondent*

SF2014409079
21071625.doc

**DECLARATION OF ELECTRONIC SERVICE AND SERVICE BY U.S. MAIL**

Case Name: ***People v. McNeely and Poston*** No.: **A141557**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collecting and processing electronic and physical correspondence. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business. Correspondence that is submitted electronically is transmitted using the TrueFiling electronic filing system. Participants who are registered with TrueFiling will be served electronically. Participants in this case who are not registered with TrueFiling will receive hard copies of said correspondence through the mail via the United States Postal Service or a commercial carrier.

On January 25, 2018, I electronically served the attached **OPPOSITION TO MOTION TO RECALL REMITTITUR** by transmitting a true copy via this Court's TrueFiling system. Because one or more of the participants in this case have not registered with the Court's TrueFiling system or are unable to receive electronic correspondence, on January 25, 2018, I placed a true copy thereof enclosed in a sealed envelope in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

Philip Morgan Brooks, Esq.
1442-A Walnut Avenue - PMB 233
Berkeley, CA 94709
*Attorney for Appellant McNeely*

Randi D. Covin. Esq.
P.O. Box 1120
Willits, CA 95490
*Attorney for Appellant Poston*

First District Appellate Project
Attn.: Executive Director
475 Fourteenth Street, Suite 650
Oakland, CA 94612

The Honorable Nancy O'Malley
District Attorney
Alameda County District Attorney's Office
1225 Fallon Street, Room 900
Oakland, CA 94612-4203

County of Alameda
Criminal Division
Rene C. Davidson Courthouse
Superior Court of California
1225 Fallon Street, Room 107
Oakland, CA 94612-4293
**via U.S. mail**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on January 25, 2018, at San Francisco, California.

| E. Rios | */s/ E. Rios* |
|---|---|
| Declarant | Signature |

SF2014409079
21071631.docx

# EXHIBIT 22

RANDI COVIN
State Bar No. 168422
P.O. Box 1120
Willits, CA. 95490
Telephone: (707) 459-2456
e-mail: rcovin13@gmail.com

Attorney for Defendant/Appellant
DONEL POSTON

COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST DISTRICT, DIVISION FIVE

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, | Appeal No. A141557 |
| Plaintiff and Respondent, | Alameda County No. 172522B |
| v. | |
| DONEL POSTON, | |
| Defendant and Appellant. | |

**<u>REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO RECALL REMITTITUR</u>**

Poston argued in his Motion to Recall Remittitur that the remittitur should be recalled to permit supplemental briefing on the application of Senate Bill 620 to this case. (See U.S. Const., amend. XIV; Cal. Const., art. I, § 15; Pen. Code, § 12022.53, subd. (h); Cal. Rules of Court, rule 8.272(c)(2).)

Received by First District Court of Appeal

Respondent counters that S.B. 620 applies retroactively to non-final cases pursuant to *In re Estrada* (1965) 63 Cal.2d 740, but not to final cases like this one. (Opposition to Motion to Recall Remittitur ("Opp.") at 2-8.) Respondent also argues that Poston should have filed a petition for writ of habeas corpus rather than a motion to recall the remittitur and that remand is unnecessary because the sentencing court would not strike the firearm enhancements on remand. (Opp. at 8-12.) These contentions should be rejected and the motion to recall the remittitur should be granted.

## I. SENATE BILL 620 APPLIES TO FINAL CASES.

Respondent acknowledges that S.B. 620 applies retroactively to all non-final cases pursuant to *Estrada* and to some final cases as well – those which require resentencing under "any other law." Opp. at 4-5. Respondent does not challenge the Legislature's authority to apply S.B. 620 retroactively to final cases in which the judgments are reversed under other laws. Respondent does not challenge Poston's argument that the Legislature can and sometimes must apply a new sentencing law retroactively to final cases. (Mot. at 7-8, 11-12.)

Respondent completely ignores the cases cited by Poston which held that new sentencing laws applied retroactively to final cases. (Mot. at 7-8; see also *In re Kapperman* (1974) 11 Cal.3d 542, 544-544-550; *In re Chavez*

(2004) 114 Cal.App.4th 989, 1000; *In re Brown* (1978) 78 Cal.App.3d 647, 650-652; *Way v. Superior Court* (1977) 74 Cal.App.3d 165, 179-180.) In *Chavez*, the Sixth District held that a legislative change to Revenue and Taxation Code section 19705, changing the punishment for filing false tax returns from an indeterminate sentence to a determinate one, applied retroactively to final cases as a matter of legislative intent. (*Id*. at pp. 991, 1000; see also *Way v. Superior Court*, *supr*a, 74 Cal.App.3d at pp. 178-180 [holding the Determinate Sentencing Act fully retroactive and applicable to cases with final judgments]; accord *In re Brown, supra*, 78 Cal.App.3d at pp. 651-652.)

In *Kapperman*, the Supreme Court held that an express statutory term mandating prospective-only application of section 2900.5, which created a right to presentence custody credits, violated equal protection. (*In re Kapperman, supra*, 11 Cal.3d at pp. 544-550.) Thus, retroactive application of section 2900.5 even to final cases was constitutionally required. (*Ibid*.)

Respondent argues a defendant like Poston, whose case is final, is not similarly situated to a defendant whose case is not final, ignoring Poston's argument that a defendant whose case is final and who is *not* resentenced under another law is similarly situated to a defendant whose case is final and who *is* resentenced under another law. Mot. at 11-12; Opp. at 8.

As respondent acknowledges, the question in assessing equal protection claims is not whether two groups are "similarly situated for all purposes, but whether they are similarly situated for purposes of the law challenged." (Opp. at 6-7, quoting *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253, and *People v. Wutzke* (2002) 28 Cal.4th 923, 943–944.) Respondent apparently has no answer to Poston's argument that he is similarly situated for purposes of S.B. 620 to a defendant whose judgment is reversed after finality on grounds unrelated to the imposition or possible striking of the firearm enhancement. (Mot. at 11-12.)

If a final judgment is reversed years after finality for a minor error pertaining to a minor joined charge in a murder case, that defendant will be entitled to resentencing under S.B. 620, even if he is far more culpable and dangerous than Poston – even if he was a deliberate serial or mass murderer with a long history of gun violence and no remorse. The Legislature's purported distinction between defendants with final judgments which are reversed under other laws and defendants with final judgments which are not reversed under other laws is irrational and arbitrary in violation of the state and federal constitutional guarantees of equal protection of the laws.

Respondent argues that that the Legislature could rationally have decided on limited retroactivity of S.B. 620 to further the deterrent purpose

of section 12022.53. (Opp. at 7.) But the author of S.B. 620 stated that the amendment to section 12022.53 (and section 12022.5) was necessary because mandatory imposition of long firearm enhancements has not proved to be an effective deterrent to violent crime. (S.B. 620, Sen. Comm. on Pub. Saf. (Apr. 24, 2017), at p. 3.) Moreover, long firearm enhancements have caused new problems, "[g]reatly increas[ing] the population of incarcerated persons [and] [d]isproportionately increas[ing] racial disparities in imprisonment[]." (*Ibid*.)

The purposes of S.B. 620 expressed by the Legislature – reduction of the prison population, reduction of racial disparities in length of imprisonment, and reduction of imprisonment costs - are best served by full retroactive application, to final as well as non-final cases. (See also §§ 4 [“The rule of the common law, that penal statutes are to be strictly construed, has no application to this code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice”], 1170, subd. (a)(1) [In 2016, the Legislature changed the official purpose of imprisonment from "punishment" for its own sake to "public safety achieved through punishment, rehabilitation, and restorative justice"].)

*Estrada* compels broad application of an ameliorative change in the law "to every case to which it constitutionally could apply . . . ." (*In re Estrada, supra*, 63 Cal.4th at p. 745.) There is no constitutional impediment to full retroactive application of S.B. 620. (See *In re Chavez, supra*, 114 Cal.App.4th at p. 1000; *Way v. Superior Court, supra*, 74 Cal.App.3d at pp. 178-180; *In re Brown, supra*, 78 Cal.App.3d at pp. 651-652.) Rather, full retroactive application is constitutionally required. (Cf. *In re Kapperman, supra*, 11 Cal.3d at pp. 544-550.)

## II. RECALL OF THE REMITTITUR IS AN APPROPRIATE REMEDY.

Respondent argues a petition for writ of habeas corpus would be a more appropriate vehicle for Poston's request for resentencing under S.B. 620, distinguishing *People v. Mutch* (1971) 4 Cal.3d 389. (Opp. at 9-11.) Respondent is correct in pointing out that *Mutch* involved the California Supreme Court's reinterpretation of a criminal statute rather than a legislative amendment. (Opp. at 9-10, fn. 2; *Mutch*, at pp. 394-395.) And the Supreme Court did analogize the motion to recall remittitur there to a habeas corpus petition, as respondent points out. (Opp. at 9-10, fn. 2; *Mutch*, at pp. 394-395.)

But the Supreme Court also indicated that recall of the remittitur is appropriate whenever habeas corpus relief is warranted. (*People v. Mutch,*

*supra*, 4 Cal.3d at pp. 396-397, 399.) Habeas corpus relief is warranted when a change in the law applies retroactively. (*In re Martinez* (2017) 3 Cal.5th 1216, 1222.) A dissenting justice in *Mutch* characterized the majority's decision as a determination that *People v. Daniels* (1969) 71 Cal.2d 1119, applied fully retroactively, even to final cases. (*People v. Mutch*, *supra*, 4 Cal.3d at pp. 402-403 [dis. opn. of Burke, J.].) The majority did not state it was treating the motion to recall as a habeas corpus petition but, rather, that it was granting the motion to recall the remittitur to effectuate the defendant's right to habeas corpus relief. (*Id*. at p. 399.)

As in *Mutch*, recall of the remittitur is appropriate here because a new law applies to Poston, who would be entitled to a writ of habeas corpus on that basis. Poston is entitled to resentencing under the new law, giving the trial court an opportunity to exercise its discretion as to whether or not the two 25-to-life firearm enhancements should be imposed.

## III. REMAND IS REQUIRED.

Contrary to respondent's claim, there is a reasonable chance one or both of Poston's firearm enhancements would be stricken if he is given an opportunity to present the issue at resentencing. As Poston explained, he did not initiate the altercation with co-defendant McNeely, the undisputed aggressor. (RB 19-20, 69, 82, 91; 1 RT 44; 20 RT 1888.) Unlike McNeely,

Poston had no violent prior offenses. (18 RT 1516-1520.) Respondent conceded that Poston had a plausible claim of self-defense. (RB 45, 78.) Poston had a credible reason for being armed for self-defense after being shot in his home by an intruder and having to face gun violence on the streets of East Oakland. (18 RT 1525-1527, 1530-1531; 19 RT 1607, 1612.)

Poston only shot McNeely after McNeely struck him and knocked him down. (Slip opn. At pp. 3-4, and fn. 3; 18 RT 1545, 1561; 19 RT 1730-1731.) It was McNeely who shot the bystander, firing wildly down the street as Poston ran away. (Slip opn. at pp. 3-4; 18 RT 1551-1552.) A sentence reduction is especially likely under the new standard which emphasizes public safety, rehabilitation, and restorative justice, instead of punishment for its own sake. (See § 1170, subd. (a).)

Moreover, resentencing is required regardless of Poston's chances of success under sections 1385 and 12022.53, subdivision (h), because the sentencing court did not have an opportunity to exercise the discretion subsequently conferred by Senate Bill 620. (Mot. at 15-16; see also *People v. Carmony* (2004) 33 Cal.4th 367, 378; *In re Marriage of Bower* (2002) 96 Cal.App.4th 893, 897; *People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8; *People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.)

At the time of Poston's sentencing, section 12022.53 did not permit dismissal of firearm enhancement allegations under section 1385. Now it does. Since "the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing." (See *People v. Brown, supra,* 147 Cal.App.4th at p. 1228.)

Denial of Poston's Motion to Recall the Remittitur would work an injustice by depriving him of the opportunity to seek application of Senate Bill 620 and the possible striking of one or both of his firearm enhancements. Poston's appeal has concluded and he is without counsel with regard to any habeas corpus petition. The preparation and filing of a habeas corpus petition and supporting documents can require extensive and time consuming work even before issuance of an order to show cause – the predicate for mandatory appointment of counsel under the rules. (See Cal. Rules of Court, rule 4.551(c)(2).)

But former appointed appellate counsel can be compensated for her work on Poston's motion to recall remittitur, this reply, and any additional required services under the former appointment if the motion is granted. Poston requests that the Court grant the motion to recall remittitur to permit

briefing even if the Court ultimately decides that S.B. 620 does not apply to final cases.

Poston believes that recall of the remittur is appropriate to allow briefing on S.B. 620. In the alternative, if the Court believes a petition for writ of habeas corpus is a more appropriate vehicle for Poston's claim, Poston requests that the Court treat his motion to recall remittitur as a habeas corpus petition or appoint his former appointed appellate counsel to prepare and file a habeas corpus petition for him.

* * * * * *

## CONCLUSION

For all of these reasons, Poston requests that this Court issue an order recalling the remittur to permit briefing on the application of Senate Bill 620; or, in the alternative, that the Court treat the motion to recall remittitur as a habeas corpus petition, issue an order to show cause, and appoint Poston's former appointed appellate counsel to represent him; or, in the alternative, that the Court appoint counsel to prepare and file a habeas corpus petition for Poston.

Dated: February 18, 2018

Respectfully submitted,

Randi Covin
Attorney for Appellant
DONEL POSTON

# DECLARATION OF SERVICE

I, Randi Covin, declare that I am over 18 years of age and not a party to this action. My business address is P.O. Box 1120, Willits, California, 95490. On February 18, 2018, I served a true and correct copy of **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO RECALL REMITTITUR on:**

Mr. Donel Poston
AT2512
High Desert State Prison
PO Box 3030
Susanville, CA. 96127

by depositing such copy in the U.S. Mail, addressed as indicated above, postage pre-paid, at Willits, California.

On February 18, 2018, I served true and correct pdf copies of the same document by Truefiling e-service to:

Attorney General
SFAG.Docketin@doj.ca.gov

First District Appellate Project
Eservice@fdap.org

Philip Brooks
philipmbrooks@gmail.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on February 18, 2018, at Willits, California.

/s/ Randi Covin

# EXHIBIT 23

COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

Court of Appeal, First Appellate District
FILED
MAY 11 2018
Charles D. Johnson, Clerk
by________________Deputy Clerk

THE PEOPLE,

Plaintiff and Respondent,

v.

JOE MCNEELY et al.,

Defendants and Appellants.

A141557

Alameda Nos. C172522A and C172522B

BY THE COURT:

Appellants' motions to recall the remittitur are denied without prejudice to the filing of petitions for writ of habeas corpus in the superior court. (*People v. Harris* (April 23, 2018) ____ Cal.App.5th _____ [ 2018 WL 1904907].)

Date: MAY 11 2018 Simons, J., Acting P.J.

Baskind

DOCKETED
SAN FRANCISCO
MAY 14 2018
By HS
No. SF201440979

B.

2010 MAY 14 A 9:56
DOCKET UNIT

HS