ROB BONTA
Attorney General of California
PEGGY S. RUFFRA
Supervising Deputy Attorney General
DAVID M. BASKIND
Deputy Attorney General
State Bar No. 208883
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3759
Fax: (415) 703-1234
E-mail: David.Baskind@doj.ca.gov
*Attorneys for Respondent*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **DONEL POSTON,**<br><br>Petitioner,<br><br>**v.**<br><br>**M. ELIOT SPEARMAN, Warden,**<br><br>Respondent. | 3:18-cv-03450-CRB (PR)<br><br>**SUPPLEMENTAL BRIEF REGARDING *BRADY* AND LIEUTENANT TONY JONES'S TEXT MESSAGES** |

**INTRODUCTION**

Based on news reports in the media, Petitioner Donel Poston previously asserted that the prosecutor may have failed to turn over evidence of racist text messages that Oakland Police Department (OPD) Lieutenant Tony Jones sent to OPD Sergeant Michael Gantt prior to the completion of Poston's trial. Poston claimed he could have used those text messages to impeach Jones's trial testimony. Doc-1 at 52-54; *see Brady v. Maryland*, 373 U.S. 83 (1963). However, respondent has now produced evidence that four Alameda County Deputy District Attorneys have indicated there are no such records. More importantly, the custodian of records for the OPD Personnel Office and the custodian of records for the OPD Internal Affairs Office have certified that they have no such records. Accordingly, this Court should find that the prosecutor did not

violate her *Brady* obligations because the texts publicized in the media were sent after Poston's trial.

## PROCEDURAL HISTORY

On July 28, 2021, this Court issued an Order re Limited Discovery and Supplemental Briefing. Doc-35. On August 11, 2021, respondent emailed Poston six documents which he believed satisfied the Court's order.

On August 13, 2021, Poston indicated to respondent that the documents did not appear to resolve the issue. Poston filed a Request for Production of Documents or Electronically-Stored Information. Doc-36.

On August 17, 2021, the Court issued an Order of Reference delegating the determination of all discovery matters to Magistrate Judge Jacqueline Scott Corley. Doc-38.

On August 25, 2021, after again reviewing the casefile in *People v. Torrence*, 2018 WL 1376741, at *22 (Cal. Ct. App. March 29, 2018)), respondent found and emailed Poston a request for *Brady* material made by Torrence's codefendant, Lawrence Denard. Ex. 1. Respondent also sent the District Attorney's response in which he indicated that he possessed no *Brady* material related to Lt. Jones.[1] Ex. 2.

On September 28, 2021, Magistrate Judge Jacqueline Scott McCorley issued an order directing respondent "to investigate whether the Oakland Police Department has evidence of Lieutenant Jones sending any racist text messages prior to Poston's sentencing. Such evidence may be in Lieutenant Jones' personnel file or in the records of the investigations into Lieutenant Jones." Doc-43 at 3.

On October 4, 2021, respondent served a subpoena on the OPD and the Oakland City Attorney's Office. Ex. 3. On October 11, 2021, Deputy City Attorney Kevin McLaughlin sent respondent two "certificates of no record" that were certified by the custodians of records for the OPD Personnel Office and the OPD Department of Internal Affairs. Exs. 4-5. Respondent emailed the certificates to Poston the same day.

[1] Poston's trial ended in March 2014 and Torrence's trial ended in June 2014. *See People v. Torrence*, 2018 WL 1376741, at *22. Therefore, if the District Attorney did not have the text messages before Torrence's trial ended, it also did not have them before Poston's trial ended.

On October 21, 2021, Poston filed his Supplemental Brief Regarding *Brady* Claim. Doc-44. In that brief, Poston concluded, "Absent any new evidence to be discovered, the unsworn certifications seem to establish that Lieutenant Jones did not send any racist text messages prior to the end of Poston's trial." *Id.* at 2.

## ARGUMENT

### A. Legal Principles

In order to prevail on a *Brady* claim, a defendant must demonstrate that (1) the evidence at issue is favorable, either because it is exculpatory or because it is impeaching; (2) such evidence was suppressed by the State, either willfully or inadvertently; and (3) prejudice resulted. *Strickler,* 527 U.S. 263, 281-82 (1999).

"Exculpatory" evidence also includes information bearing on a prosecution witness's credibility. *United States v. Bagley*, 473 U.S. 667, 675-76 (1985). However, impeachment evidence "may not be material if the State's other evidence is strong enough to sustain confidence in the verdict." *Smith v. Cain*, 565 U.S. 73, 76 (2012); *Strickler*, 527 U.S. at 293 (withheld evidence impeaching eyewitness was not material where she was not the only witness and there was considerable other forensic and physical evidence linking petitioner to the crime).

"[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. at 682. "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). Thus, a "reasonable probability" is shown when the failure to disclose evidence "'undermines confidence in the outcome of the trial.'" *Id.* (quoting *Bagley* at 678). Materiality "must be evaluated in the context of the entire record." *United States v. Agurs,* 427 U.S. 97, 112 (1976).

"Evidence is 'suppressed' where it is known to the State and not disclosed to the defendant." *Comstock v. Humphries*, 786 F.3d 701, 709 (9th Cir. 2015); *see United States v. Dupuy*, 760 F.2d 1492, 1502, n. 5 (9th Cir. 1985) ("any allegation of suppression boils down to

an assessment of what the State knows at trial . . . ."). "'The government's obligation under *Brady* cannot apply to evidence not in existence at the time of the criminal proceeding.'" *Martinez v. Ryan*, 926 F.3d 1215, 1228 (9th Cir. 2019) *quoting United States v. Edwards*, 145 F.3d 1347, *2 (10th Cir. 1998). *Brady* does not oblige the government "to produce information which it does not possess or of which it is unaware." *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995); *United States v. Burleson*, No. 216CR00046GMNPAL16, 2021 WL 2417723, at *3 (D. Nev. June 14, 2021) ("the Wooten Memos do not implicate a *Brady* violation because they did not exist until after the completion of Defendant's trial"); *Light-Roth v. Sinclair*, No. C11-0313-JCC, 2011 WL 7020919, at *19 (W.D. Wash. Nov. 2, 2011) ("this information did not exist until after petitioner's trial and, therefore, could not have been suppressed or falsely presented at trial").

### B. Pursuant to This Court's Order, Respondent Has Provided Poston with Documents That Show That the District Attorney Did Not Learn About Lt. Jones's Text Messages Before Poston's Trial Ended

*Brady* claims apply in situations that "involve[] the discovery, after trial of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. at 103. If the prosecution did not possess the information prior to trial, no *Brady* violation arises. *Martinez v. Ryan*, 926 F.3d at 1228 (collecting cases). In *Martinez*, the Ninth Circuit adopted the "commonsense conclusion" that "[i]f the prosecution does not discover, or does not have a duty to discover, certain evidence until after the trial ends, then there can be no *Brady* claim against it even if exculpatory evidence later surfaces." *Id.*; *see District Attorney's Office v. Osborne*, 557 U.S. 52, 68-69 (2009) (holding that *Brady* is a "preconviction trial right[]" that does not apply after trial).

Here, respondent has provided Poston with a dozen documents that show the prosecution did not possess *Brady* material before the conclusion of Poston's trial. Among that evidence is statements by four Alameda County Deputy District Attorneys that they possessed no *Brady* materials. Exs. 2, 6-8. Respondent also served the OPD and Oakland City Attorney with subpoenas for "Any text messages (w/dates) and investigatory documents (including those located in OPD Lt. Tony Jones's confidential personnel file) that could be construed as evidence

that Lt. Jones sent racist text messages to OPD Sgt. Michael Gantt or any other OPD officer prior to March 22, 2014." Ex. 3. The custodians of records for the OPD Personnel Office and Department of Internal Affairs responded with certifications of no records. Exs. 4-5.

As this Court noted in its Order for Limited Discovery, "An unpublished California Court of Appeal decision indicates that the messages 'appear to have been sent in July 2014,' and that the other officer 'first complained about the texts in August 2014.'" Doc-35 at 2 (*quoting People v. Torrence*, 2018 WL 1376741, at *22). *Torrence*'s conclusion is consistent with the two text messages that respondent could find online. Those messages were dated months after Poston's trial. *See* Ex. 9-10.[2] *Torrence*'s conclusion is also consistent with the statements by the four Deputy District Attorneys and the custodians of record for the OPD Personnel Office and Department of Internal Affairs. Exs. 2, 4-8. Therefore, as petitioner acknowledges, all of the available evidence indicates that Lt. Jones's purportedly racist text messages were sent after the conclusion of Poston's trial. Accordingly, the prosecutor could not have violated *Brady* by failing to produce evidence that did not yet exist.[3] *See Martinez v. Ryan*, 926 F.3d at 1228; *Sanchez v. United States*, 50 F.3d at 1453; *United States v. McCurdy*, 61 F.3d at *3.

//

//

//

//

//

//

[2] The first text message image was dated "Sun, May 25." The last May 25 that was a Sunday was in 2014. The second image was dated July 11, 2014.

[3] Because the prosecution did not possess any text messages before the conclusion of Poston's trial, this Court need not address the materiality of the text messages that were published in the media. However, respondent maintains that those text messages were not material. Lt. Jones was not a percipient witness and his testimony was relatively unimportant. Poston was convicted because the entire shooting was recorded by surveillance cameras. Therefore, it is not reasonably probable that Poston would have obtained more favorable results if he had been able to impeach Jones's testimony with those text messages. *See United States v. Bagley*, 473 U.S. at 682; *Strickler v. Greene*, 527 U.S. at 293 (impeachment evidence "may not be material if the State's other evidence is strong enough to sustain confidence in the verdict"). Accordingly, the state court could have reasonably denied the *Brady* claim based on the lack of materiality.

## CONCLUSION

For the reasons stated above, respondent respectfully asks this Court to deny the *Brady* issue that Poston raises in Claim XIII.

Dated: October 27, 2021

Respectfully submitted,

ROB BONTA
Attorney General of California
PEGGY S. RUFFRA
Supervising Deputy Attorney General

/s/ David M. Baskind
DAVID M. BASKIND
Deputy Attorney General
*Attorneys for Respondent*

SF2018401181
42935900.docx

# EXHIBIT 1

**BARRY M. KARL**
*Attorney at Law*

620 Jefferson Avenue
Redwood City, CA 94063

Telephone: (650) 366-6789
Facsimile: (650) 363-1218

RECEIVED
2016 AUG 18 AM 8: 38
DISTRICT ATTORNEY
ALAMEDA COUNTY

August 15, 2016

Nancy O'Malley
District Attorney
1225 Fallon Street
9th Floor
Oakland, CA 94612

RE: People v. Lawrence Denard & Willie A. Torrence, No. A142592
Alameda County Superior Court Nos. 171910 A & B

Dear Ms. O'Malley:

I am appellate counsel for Mr. Denard in his pending matter before the Court of Appeal. In that regard I am requesting that I be provided with the following items pursuant to *Brady v. Maryland* (1963) 373 U.S. 83 and *People v. Garcia* (1993) 17 Cal. App. 4th 1169:

1) The District Attorney's reject sheet for an arrest occurring on August 11, 2011, involving Dashawn Rico, BIQ226, by the Oakland Police Department (Officers J. Fesmire and M. Masso – Event # 11-03871);
2) The criminal history of Dashawn Rico, including but not limited to, a second degree burglary occurring in December, 2007, a grand theft (originally charged as a robber) occurring in August, 2008, obstructing an executive officer through the use of force or threats, occurring in June, 2010, and a double homicide occurring on October 1 2011;
3) The police reports related to each incident above and Oakland Police Department report number 11-050808, an incident that resulted in Mr. Rico being charged with two counts of murder occurring on October 15, 2011;
4) All documents related to Oakland Police Sergeant M. Gantt, including but not limited to his termination from the Oakland Police Department, his reinstatement, and any other investigation undertaken by the Alameda County District Attorney regarding him;
5) All documents related to Oakland Police Lieutenant Tony Jones and the racist texts (Klu Klux Klan photographs) he allegedly sent

to M. Gantt, and appearing in a broadcast of ABC news, and any other investigation undertaken by the Alameda County District Attorney regarding him;

6) The protocol used by the Alameda County District Attorney to become apprised of favorable material regarding the Oakland Police Department and its officers;
7) The protocol used by the Alameda County District Attorney to notify the defense, both trial and appellate counsel, as to the discovery of favorable material relating to police officers;
8) The reasons why appellate counsel in the above-referenced matter has not been notified of potentially favorable material;
9) The Oakland Police Department's protocol for conducting photographic line-ups that were in effect at the time of this case (August, 2011); and
10) Any and all information in the possession of you or your agents that is favorable to the defense.

I would appreciate the courtesy of a reply at your earliest convenience.

Thank you,

Barry M. Karl
Attorney for Lawrence Denard

Court of Appeal, First Appellate District
Charles D. Johnson, Clerk/Administrator
Electronically FILED on 1/4/2017 by M. Garcia, Deputy Clerk

**STATE OF CALIFORNIA**
Court of Appeal, First Appellate District

## *PROOF OF SERVICE*

(Court of Appeal)

Case Name: **In re Lawrence Denard, on Habeas Corpus**
Court of Appeal Case Number: **A150186**
Superior Court Case Number:

1. At the time of service I was at least 18 years of age and not a party to this legal action.

2. My email address used to e-serve: **bkarl1@mindspring.com**

3. I served by email a copy of the following document(s) indicated below:

Title(s) of papers e-served:

| Filing Type | Document Title |
|---|---|
| EXHIBIT - EXHIBITS | Habeas Exhibits 1-2 |

| PERSON SERVED | EMAIL ADDRESS | Type | DATE / TIME |
|---|---|---|---|
| Barry Karl<br>Barry M. Karl, Attorney at Law<br>76953 | bkarl1@mindspring.com | e-Service | 01-04-2017 2:26:35 PM |
| FDAP fdap<br>Additional Service Recipients | eservice@fdap.org | e-Service | 01-04-2017 2:26:35 PM |
| Frank McCabe<br>Additional Service Recipients | jfrankmccabe@yahoo.com | e-Service | 01-04-2017 2:26:35 PM |
| Kamala Harris<br>Additional Service Recipients | sfag.docketing@doj.ca.gov | e-Service | 01-04-2017 2:26:35 PM |

This proof of service was automatically created, submitted and signed on my behalf through my agreements with TrueFiling and its contents are true to the best of my information, knowledge, and belief.

I declare under penalty of perjury under the laws of the State of California that the

foregoing is true and correct.

01-04-2017
Date

/s/Barry Karl
Signature

Karl, Barry (76953)
Last Name, First Name (PNum)

Barry M. Karl, Attorney at Law
Law Firm

# EXHIBIT 2

**Office of the District Attorney**
**Alameda County**
**Nancy E. O'Malley, District Attorney**

District Attorney's Office • Alameda County •

**Rene C. Davidson Courthouse**
**1225 Fallon Street, Suite 900**
**Oakland, CA 94612**

November 22, 2016

Barry Karl
620 Jefferson Avenue
Redwood City, CA 94063

RE: *People v. Lawrence Denard* and *Willie Torrence*, Appellate # A142592, Superior Court #171910A/B

Dear Mr. Karl:

I am in receipt of your letter dated August 15, 2016 requesting discovery pursuant to *Brady* and *Garcia*. Though we do not believe we are required to provide discovery per Penal Code section 1054.9, we will respond to your request as a courtesy. Our responses correspond to the numbers on your request. I have attached a copy of your request for reference as Exhibit 1.

1) The Alameda County District Attorney's Office will not disclose this information pursuant to Penal Code section 1054.6.

2) There is no additional discoverable criminal history of Dashawn Rico (DOB: 8/3/1992)beyond what was provided at the time of trial. At trial, the People discovered Mr. Rico's relevant adult criminal history. (See Exhibit 2: discovery logs and receipt) Prior to trial, the People provided the police report related to Mr. Rico's moral turpitude arrest. (See Exhibit 3: Bates stamp 1341-1376 and 1029-1031.) Mr. Rico has a juvenile record, but it will not be included in response to your informal discovery request. (Note: defendant's trial counsel was on notice that Mr. Rico had a juvenile record. See Exhibit 3: Bates stamp 1341-1342.)

3) The Alameda County District Attorney's Office will not disclose these police reports pursuant to the restrictions of Welfare and Institutions Code section 827.

4) The Alameda County District Attorney's Office does not have any discovery to disclose in response to this request.

5) The Alameda County District Attorney's Office does not have any discovery to disclose in response to this request.

6) Absent a showing that this information is discoverable per Penal Code section 1054 or *Brady,* the Alameda County District Attorney's Office will not disclose this information.

7) Absent a showing that this information is discoverable per Penal Code section 1054 or *Brady,* the



**Phone: (510) 272-6222 • Email: askrcd-da@acgov.org • www.alcoda.org**

Alameda County District Attorney's Office will not disclose this information.

8) The Alameda County District Attorney's Office does not have anything to disclose pursuant to this request.

9) The Alameda County District Attorney's Office is not in possession of this information.

10) The Alameda County District Attorney's Office has nothing further to disclose at this time.

Respectfully,

NANCY E. O'MALLEY
District Attorney

By:
Tim Wagstaffe
Deputy District Attorney

# EXHIBIT 3

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | | |
|---|---|---|
| Donel Poston<br>*Plaintiff*<br>v.<br>M. Eliot Spearman<br>*Defendant* | ) ) ) ) ) ) | Civil Action No. 3:18-cv-03450-CRB (PR) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Oakland Police Department, Police Administration Bldg 455 7th Street, Oakland, CA 94607; Oakland City Attorney, City Hall, 6th Floor, 1 Frank Ogawa Plaza, Oakland, CA 94612

*(Name of person to whom this subpoena is directed)*

✓ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Any text messages (w/dates) and investigatory documents (including those located in OPD Lt. Tony Jones's confidential personnel file) that could be construed as evidence that Lt. Jones sent racist text messages to OPD Sgt. Michael Gantt or any other OPD officer prior to March 22, 2014.

| Place: Deputy Attorney General David Baskind,1515 Clay Street, 20th Floor, Oakland, CA 94612 or by email to David.Baskind@doj.ca.gov | Date and Time: 10/15/2021 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 10/04/2021

*CLERK OF COURT*

_____________________________
*Signature of Clerk or Deputy Clerk*

OR

[signature]
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* M. Eliot Spearman, who issues or requests this subpoena, are:

DAG David Baskind; 455 Golden Gate Avenue, San Francisco, CA 94102; David.Baskind@doj.ca.gov; 415-510-3759

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# EXHIBIT 4

**CERTIFICATION OF NO RECORDS**

Subpoena in civil action *Poston v. Spearman*, Case No. 3:18-cv-03450-CRB (PR)

I, Amber Fuller, declare as follows:

1. I am over the age of eighteen years, and I am not a party to this action. I have personal knowledge of each fact stated in this declaration.

2. I am employed by City of Oakland as Acting Human Resources Manager for the Oakland Police Department.

3. I am the duly authorized custodian of any Human Resources Section records that are requested in the above-referenced subpoena.

4. A deposition subpoena has been served on me for the production of those records.

5. Following a diligent search and reasonable inquiry, I hereby certify and attest that no records exist in the Human Resources Section that are responsive to this subpoena.

Date: 10/8/21 Signed: ____________

# EXHIBIT 5

**CERTIFICATION OF NO RECORDS**

Subpoena in civil action *Poston v. Spearman*, Case No. 3:18-cv-03450-CRB (PR)

I, James Henry, declare as follows:

1. I am over the age of eighteen years, and I am not a party to this action. I have personal knowledge of each fact stated in this declaration.

2. I am employed by City of Oakland as a Police Officer.

3. I am the duly authorized custodian of any Internal Affairs Division records that are requested in the above-referenced subpoena.

4. A deposition subpoena has been served on me for the production of those records.

5. Following a diligent search and reasonable inquiry, I hereby certify and attest that no records exist in the Internal Affairs Division that are responsive to this subpoena.

Date: 10/11/2021 Signed: ______________________

# EXHIBIT 6

## David Baskind

**From:** Beltramo, Ben, DA <ben.beltramo@acgov.org>
**Sent:** Tuesday, March 14, 2017 4:26 PM
**To:** David Rose
**Subject:** Re: Another question

Hi David:
I conferred with our Brady coordinator, Greg Dolge, about this issue a few weeks ago. He confirmed that there is no Brady information on Lt Jones on this issue nor has Lt Jones been "flagged" in our Brady bank (indicating there may be Brady info that needs to be accessed via Pitchess).
I am also aware that Lt Jones was never suspended, contrary to media accounts. I am informed that he was placed on paid administrative leave pending a thorough investigation into this matter and after the investigation was subsequently placed back on full time regular duty Without ANY discipline.
I am currently on vacation and will return to work this Thursday. Please feel free to contact me via email if you have any other questions.
Thank you,
Ben

Sent from my iPhone

On Mar 14, 2017, at 2:58 PM, David Rose <David.Rose@doj.ca.gov<mailto:David.Rose@doj.ca.gov>> wrote:

Hi Ben

I'm looking at Denard's Habeas Petition, where he talks about Tony Jones' alleged racist texts to Mike Gantt. He alleges, based on media reports, that OPD did an investigation, and that Jones was suspended.

Tim Wagstaffe replied to Petitioner's letter requesting material regarding the investigation by saying: "The Alameda County District Attorney's Office does not have any discovery to disclose in response to this request."

Do you know what the basis is for his response?

Thanks, David

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

# EXHIBIT 7

Alameda County
**District Attorney's Office**
Nancy E. O'Malley, *District Attorney*

Gregory Dolge declares under penalty of perjury:

1. I am the Alameda County Deputy District Attorney assigned to handle discovery matters concerning peace officer personnel employed by local law enforcement agencies, including the Oakland Police Department (hereafter "OPD".)

2. The Alameda County District Attorney's Office has a formal process set up with OPD pursuant to which the department will notify our office (with notification being limited to the name of subject officer only) that there may be material in the subject officer's personnel file that is potentially discoverable pursuant to *Brady v. Maryland* and its progeny.

3. At no time has OPD alerted the Alameda County District Attorney's Office of any such material regarding OPD Lt. Tony Jones.

4. Except under limited circumstances that do not apply here, the Alameda County District Attorney's Office cannot directly access any internal OPD investigation files.

5. The Alameda County District Attorney's Office is not in actual possession of, nor does it have independent knowledge of, any discoverable collateral impeachment information regarding Lt. Jones.

I declare in good faith based on information and belief that the foregoing is true and correct.

Signed this 20th day of March, 2017.

Gregory Dolge, Deputy District Attorney

# EXHIBIT 8

Rob Bonta
Attorney General of California
PEGGY S. RUFFRA
Supervising Deputy Attorney General
DAVID M. BASKIND
Deputy Attorney General
State Bar No. 208883
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 510-3759
Fax: (415) 703-1234
E-mail: David.Baskind@doj.ca.gov
*Attorneys for Respondent*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **DONEL POSTON,**<br>Petitioner,<br>**v.**<br>**JASON PICKETT, Acting Warden,**<br>Respondent. | Case No. 3:18-cv-03450-CRB (PR)<br>**DECLARATION OF DAVID M. BASKIND** |

1. I, David M. Baskind, am the California Deputy Attorney General assigned to represent the respondent in this matter.

2. I have personal knowledge of facts stated in this declaration, and if called to testify, I could and would testify competently thereto.

3. On July 28, 2021, the Court ordered “Respondent’s counsel to obtain and provide to Poston’s habeas counsel evidence relevant to when the prosecution discovered, or had a duty to discover, the specific text messages at issue in the internal investigation mentioned in the June 2016 article and report.”

4. On August 5, 2021, I reviewed the Attorney General’s case file for *People v. Torrence*,

2018 WL 1376741 (Cal. Ct. App. March 29, 2018), which was cited in the memorandum of points and authorities and the Court's order. The only relevant information that I found was a declaration by Alameda County Deputy District Attorney Greg Dolge. *See* Ex. 28. I emailed Dolge and asked if he knew anyone who had more information about the text messages.

4. On August 9, 2021, Alameda County Deputy District Attorney Casey Bates called me and told me that the district attorney's office had no text messages, no dates of text messages, and no information about an investigation into the text messages. According to Bates, his office learned about the situation from the media. Bates emailed me three links for more information:

https://www.courthousenews.com/wp-content/uploads/2017/02/Gantt.pdf

https://sfist.com/2016/08/11/oakland_suspends_two_police_officer/

https://sfist.com/2016/06/18/oakland_loses_third_police_chief_in/

5. On August 9, 2021, I performed a Google search and found an NBC news video clip from June 18, 2016. *See* https://www.nbcbayarea.com/on-air/as-seen-on/acting-opd-chief-paul-figueroa-steps-down_-sources_bay-area/2000855/. I took five photographs of images of text messages shown in that clip. *See* Ex. 29.

6. Based on the advice of a colleague, I do not believe that I have standing to request confidential personnel records from the Oakland Police Department.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on August 14, 2021.

Dated: August 14, 2021

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
PEGGY S. RUFFRA
Supervising Deputy Attorney General

*/s/ David M. Baskind*
DAVID M. BASKIND
Deputy Attorney General
*Attorneys for Respondent*

DMB:er
SF2018401181
42843772.docx

# EXHIBIT 9


Mail - David Baskind - Outlook
Mail - David.Baskind@doj.ca.gov
The New York Times - Breaking
Photos - Google Photos
nbcbayarea.com/on-air/as-seen-on/acting-opd-chief-paul-figueroa-steps-down_-sources_bay-area/2000855/
Apps
G Bookmarks
Outlook
AG email
AG Admin
Gmail
VMware
WL
WestCheck
Cross
538
Adobe
NBC BAY AREA
AS SEEN ON
LOCAL
WEATHER
INVESTIGATIONS
VIDEO
OLYMPICS
ENTERTAINMENT
Type here to search
ViewSonic


Mail - David Baskind - Outl
Mail - David.Baskind@doj.c
Acting OPD Chief Paul
The New York Times - Break
Taco Bell - Google Maps
Denny's - Go
nbcbayarea.com/on-air/as-seen-on/acting-opd-chief-paul-figueroa-steps-down_-sources_bay-area/2000855/
Apps
G Bookmarks
Outlook
AG email
AG Admin
Gmail
VMware
WL
WestCheck
Cross
538
Adobe
AmSmile
NBC BAY AREA
LOCAL
WEATHER
INVESTIGATIONS
VIDEO
OLYMPICS
ENTERTAINMENT
Trevelyon Jones
Sun, May 25, 5:17
CAP'N CRUNCH
More As Seen On Videos
Type here to search
ViewSonic


Mail - David Baskind - Outl
Mail - David.Baskind@doj.c
Acting OPD Chief Paul
The New York Times
nbcbayarea.com/on-air/as-seen-on/acting-opd-chief-paul-figueroa-steps-down_-sources_bay-area/2000855/
Apps
G Bookmarks
Outlook
AG email
AG Admin
Gmail
VMware
WL
WestCheck
Cross
538
Adobe
NBC BAY AREA
LOCAL
WEATHER
INVESTIGATIONS
VIDEO
OLYMPICS
Brad i heard you got boxes of these in your cupboards
Baker
Message
More As Seen On Videos
Type here to search
TOKYO 2020
ViewSonic


Jul 11, 2014, 9:33 AM
We Pimpin!!
themselves for us
2:26
Seen On Videos


PEANUT BUTTER
CRUNCH
NBC BAY AREA

# EXHIBIT 10

Thanks for checking out our new design, please let us know if you have feedback

Search Go

# Oakland Suspends Two Police Officers In Racist Texting Scandal

by Jay Barmann in News on Aug 11, 2016 4:45 pm

8 Like Share Tweet




*Still via NBC Bay Area*

A series of racially offensive texts sent by two Oakland police officers, the revelation of which led directly or indirectly to the removal of the third of three police chiefs in quick succession in June, has resulted in those two officers getting suspended. As the Chronicle reports, the city of Oakland issued a statement about the suspensions Wednesday but declined to identify the officers by name, citing state privacy laws.

We know, however, from when news of the scandal broke, that the texts in question — assuming we're talking about the same texts — were exchanged between two African-American officers, Lt. Tony Jones and his former friend Sgt. Mike Gantt. Jones had already been placed on leave as of June as part of a wider investigation into the texts. Again, however, we can not confirm that these same two officers were the ones suspended. Per the Chron, Mayor Libby Schaaf, who previously derided the "frat house" culture of the police department, confirmed that the suspended officers were both African American.

One of the offending texts, revealed by the City of Oakland and captured on camera by NBC Bay Area (shown above), depicts an image of Ku Klux Klan members whispering to one another "N***ers be killing themselves

for us."

Per KRON 4, the Oakland Police Department will be undergoing "a refresher course the city's anti-discrimination and non-harassment policies."

City spokesperson Karen Boyd said, "In keeping with our commitment to transparency and accountability to the public, the city of Oakland is providing as much information regarding the outcome of this investigation as we are allowed to share by law."

Meanwhile, Sgt. Gantt was also implicated in a separate investigation involving crime scene paperwork he'd submitted. As KRON 4 reported, Gantt, who is married, allegedly had a girlfriend write reports for him, and was known to leave evidence at her home, potentially putting important convictions at risk because it was out of his custody.

**Previously:** Oakland Loses Third Police Chief In A Week Amid Brand New Racist Texting Scandal

Contact the author of this article or email tips@sfist.com with further questions, comments or tips.

Tweet Like 8 submit

- oakland
- oakland police
- oakland police scandal
-

# Other Interesting Stories

Sponsored Links by Taboola

**Why This Razor Is Causing So Many Guys To Switch**
Harry's

**Kate Middleton Drops Jaws, Proving Prince William Is A Lucky Man**
Livingly

**6 Reasons Why More Glasses are Sold Online**
GlassesUSA.com

**Why Homeowners in California Are Going Solar**
SolarCity Quotes

**Only 1 in 50 People Can Pass This Native American Quiz**
History Fanatic

**San Jose, California Residents Are Stunned By This New Rule**
Provide-Savings Insurance Quotes

SFGATE http://www.sfgate.com/news/article/Latest-Oakland-police-chief-is-out-after-two-days-8310286.php

# Oakland police bombshells: Racist texts, latest chief steps down

By Rachel Swan, Phil Matier and Matier & Ross Updated 8:15 am, Saturday, June 18, 2016

ADVERTISEMENT

Oakland's acting police chief Paul Figueroa stepped down Friday, becoming the third head of the Oakland Police Department to abruptly leave the top post in nine days, just as another bombshell dropped: A new internal investigation is under way, this time into racist text messages and emails shared among officers.

A visibly frustrated Mayor Libby Schaaf revealed the probe at a news conference Friday night that she began with a simple declaration: "I am here to run a police department, not a frat house." With that, she disclosed that her city's department, already engulfed in a sex scandal, was also being probed for racist communications that were "wholly inappropriate and not acceptable for anyone who wears the badge of the Oakland Police Department."

The texts were sent by African American officers, Schaaf said. She would not give other details, including whether members of the police command staff were implicated, saying state law governing public release of police disciplinary matters prevented her from doing so.

Some of the officers being investigated were "engaging in hate speech," and others were "tolerating it" by receiving offensive messages and not reporting them, Schaaf said. One text obtained by NBC news showed an image of a Ku Klux Klan member on a cereal box with the message, "Brad, I heard you got boxes of these in your cupboards." Another text appeared to show the word, "N —."

In a move in which the mayor indicated she had lost faith in police leaders to run the department, she disclosed that she would not appoint another interim or acting chief to the top post. Instead, the department will have no chief, and for the time being command staff will report to City Administrator Sabrina Landreth as Oakland conducts a national search for a new chief.

ADVERTISEMENT





**IMAGE 1 OF 20**

Acting Oakland Police Chief Paul Figueroa, who had taken the job just two days ago, is stepping down for unspecified reasons, sources close to City Hall said Friday, June 17, 2016.

"I feel that this is an appropriate time to place civilian oversight over this Police Department, to send a clear message about not tolerating misconduct, and to root out what is clearly a toxic, macho culture," Schaaf said.

News of Figueroa's decision came just hours after the explosive revelation that longtime Oakland police veteran Sgt. Mike Gantt ha allowed his girlfriend to write some of his reports — and that she had shared confidential case information on social media, according to sources familiar with the matter. That development came amid an ever-expanding sexual misconduct case that has no implicated law enforcement officers at several other law enforcement agencies and at least one employee at a U.S. Department of Defense agency.

**RELATED STORIES**



**Oakland's new Police Chief Fairow removed from job**



**BART boss: Ousted Oakland interim chief admitted to old affair**



**Sean Whent is out as Oakland police chief**

Schaaf declined to discuss Gantt's case at the news conference, saying it would compromise her ability to seek the highest punishment possible. She said the department has referred cases he investigated that could be tainted to the Alameda County District Attorney's office.

ADVERTISEMENT

The mayor's heightened emotion on Friday marked a stark contrast to the image of calm and control that she projected at City Hall last week after the sudden departure of Chief Sean Whent. Schaaf replaced Whent with interim Chief Ben Fairow, who she had not fully vetted and wound up firing after six days.

Several city officials were angry that the mayor had left them in the dark about Whent's apparent ouster. Schaaf initially said the chief had resigned for personal reasons, but indicated Friday that she cannot fully disclose what happened because of a state law that guarantees confidentiality for police personnel files.

"I take ownership of my mistakes," the mayor said Friday. "I hope I have been clear in what my intentions are."

Meanwhile, the mayor has set her sights on significantly changing the department — ending what she says is a disgusting frat culture, even as the department has been under federal oversight for the last 13 years.

"We have a department with almost no women, no LGBT people, and a dramatic underrepresentation of people of color," Councilwoman Rebecca Kaplan told The Chronicle. She is pushing for reforms that would require Oakland's police force to rethink its hiring and recruiting strategies.

Indeed, many of the people caught up in recent disciplinary cases, including the sexual misconduct case involving a teenage sex worker, are rookie officers who were hired after 2013.

Over the past three years, Mayors Jean Quan and Libby Schaaf have made an aggressive push to boost the city's police force, and Schaaf, in particular, established herself as a stalwart both for Whent and for the rank and file.

But with additional scandals bubbling up on what seems like a daily basis, she has struggled to restore public trust in the police forc she worked so hard to build up.

"I think the community's faith is completely destroyed in that department," said Alameda County Public Defender Brendon Woods.

"This cannot go on," said civil rights attorney Jim Chanin, who on Wednesday announced that he and fellow lawyer John Burris ma ask a federal judge to intervene in hiring and recruitment for Oakland's beleaguered department.

Yet others are confident that Schaaf will find a reformer from outside who can whip the force into shape.

"I think she can find someone who is really ruthless about instituting reforms of these kinds of things," said Peter Keane, a former San Francisco police commissioner and law professor at Golden Gate University.

But that person probably has to come from another city, he cautioned. "You can't do any of this stuff with an internal candidate."

**Chronicle staff writers** Erin Allday **and Demian Bulwa contributed to this report.**

*Rachel Swan, Phil Matier and Andrew Ross are San Francisco Chronicle staff writers. Email: rswan@sfchronicle.com, pmatier@sfchronicle.com and aross@sfchronicle.com*

© 2016 Hearst Communications, Inc.

HEARST




Thanks for checking out our new design, please let us know if you have feedback

Search Go

# Oakland Loses Third Police Chief In A Week Amid Brand New Racist Texting Scandal

by Jay Barmann in News on Jun 18, 2016 10:20 am

69
Like
Share
Tweet



**Ali Winston**
@awinston

Follow

For an idea about the rank and file's opinion on Paul Figueroa: this was making the rounds in #OPS social circles

6:12 PM - 17 Jun 2016

29 16

---

Wow, Oakland. Recently fired/resigned SF Police Chief Greg Suhr had some terrible problems to deal with in the SFPD over the last few years, but the Oakland Police Department is trying really damn hard to outdo SF in the scandal department, and all with a brand new mayor at the helm. As of Friday, Interim Police Chief Paul Figueroa, who had been second in command to Chief Sean Whent prior to his forced resignation a week ago, has stepped down from the post inside of two days, taken a leave of absence, and a demotion. As the East Bay Times reports, Figueroa was "struggling with the stress" of the job, and part of that may have had to do with a racist texting scandal coming to light much like San Francisco's own.

Oakland Mayor Libby Schaaf opened her press conference Friday, as the Chron reports, saying, "I am here to run a police department, not a frat house," and condemning the racist texts as "wholly inappropriate and not acceptable for anyone who wears the badge of the Oakland Police Department."

Also, to get an idea of the rank and file's opinion of Figueroa after he assumed the chief's job this week, just see the image above of his head on a rat's body that was apparently circulating amongst their smartphones this week.

The racist texts, at least the ones we know of so far, go back two years and were exchanged between two officers in particular, and came to light after those officers had a falling out. Per the EB Times, Lt. Tony Jones, who is African American, had been placed on leave as part of a wider investigation into texts between multiple commanding officers, and his former friend Sgt. Mike Gantt, who is also African American, came forward with some particularly racist messages from Jones after he discovered he was under investigation for something else altogether. One text in particular, on the topic of how cops didn't need to kill African Americans because they were all killing each other, and features a picture of Ku Klux Klan members.

NBC Bay Area obtained images of the offending texts, two of which you can see below.




*Still via NBC Bay Area*




*Still via NBC Bay Area*

Gantt allegedly had his girlfriend ghostwrite his homicide investigation paperwork for him, and left key evidence in a 2013 homicide case at her house. Multiple investigations he worked on could be compromised if it comes to light that he made a habit of doing this. Also, as KRON 4 reports, Gantt is married, and said girlfriend published confidential information about that case on a social media site. The case was the murder of 66-year-old Judy Salamon who was found dead in her car after she was allegedly using her cell phone to record two men committing another crime in her neighborhood.

And this of course follows on the scandal we learned of just a week ago involving over a dozen OPD officers and other law enforcement members in SF and the East Bay who are accused variously of abetting sex trafficking, statutory rape, and exchanging classified information for sex with a sex worker — a case that led to the suicide of one officer last fall. As the East Bay Express puts it, "Oakland now resembles *Game of Thrones* sans tunics, swords and dragons."

After already having to fire Interim Chief Ben Fairow earlier in the week, Schaaf moved to appoint a civilian woman, City Administrator Sabrina Landreth, to be temporarily in charge of the police department, saying, "I feel that this is an appropriate time to place civilian oversight over this Police Department, to send a clear message about not tolerating misconduct, and to root out what is clearly a toxic, macho culture."

Several Oakland City Coucilmembers immediately spoke out against Schaaf, with Councilmember Noel Gallo saying, "We went from worse to worse" with the appointment of Landreth. "We're left with an administrator, and she doesn't know anything about policing," said Gallo to the East Bay Times.

The paper also quotes Councilmember Desley Brooks saying, "The mayor needs to demonstrate some leadership. I'm extremely disappointed. It's embarrassing for the members of the department as well as the city."

As you may or may not know, the Oakland Police Department has been under federal oversight for thirteen years following another scandal, called The Riders Case, and had been close to completing a lengthy series of reforms when the scandal involving sex worker Celeste Guap came to light in recent weeks.

The LA Times has been all over this story too, and they quote Figueroa, from the press conference, saying, "I thank the city for the opportunity, and I am deeply sorry that I was unable to fulfill the functions of acting chief of police." They also quote Schaaf as saying to a reporter, "I'm hoping to not have to fire anyone else anytime soon."

**Previously:** Why Was The Interim Oakland Police Chief Canned So Quickly?
Oakland Police Sex Scandal Deepens With More East Bay Officers Implicated, Interim Oakland Chief Fired

Contact the author of this article or email tips@sfist.com with further questions, comments or tips.

Tweet Like 69 submit

- libby shcaaf
- oakland
- oakland police
- oakland police scandal
- racist texting
-

## Other Interesting Stories